## PARKER et v INGLE et

Ohio Appeals, 2nd. Dist, Montgomery Co

No 1454. Decided Dec 28, 1937

138

Alcorn & Schulman, Dayton, Attorneys for Plaintiffs-Appellants.

Hollencamp & Lair, Dayton, Attorneys for Defendants-Appellees

## OPINION

By HORNBECK, J.

This is an appeal on questions of law prosecuted by appellants from a judgment against them on the second cause of action of their amended petition and in favor cf appellee, William A. Hilt, on his cross petition.

The facts which are germane to the questions presented on the appeal appear in the pleadings, entries and bill of exceptions.

On and prior to March 19, 1931, Mary E. Ingle and her husband, Anderson J. Ingle, were the owners of lot No. 8575 of the revised and consecutive numbers of lots on the plat of the city of Dayton. On the above date and prior thereto the Dayton Building & Loan Association held two mortgages on said real estate, securing an indebtedness which, together with interest, amounted, on December 5, 1932, to $7,389.-42, and upon which the mortgagee was threatening foreclosure. On March 19, 1931, Anderson J. Ingle, Mary E. Ingle and the plaintiffs appellants as co-makers, executed and delivered a note in the sum of $400.00, payable to the Dayton Morris Plan Bank, to secure which, on the same date, a mortgage was given by the Ingles. On this date, the bank had two other mortgages made by the Ingles which were afterwards released. This mortgage, of date March 19, 1931, was second in priority to the mortgages of the Dayton Building & Savings Association. On January 2, 1932 the $400.00 note had been reduced to $250.00, at which time a new loan was made, represented by a note in the sum of $250.00, signed by the same parties as the original note for $400.00. On September 11, 1933 another note in the sum of $200.00, representative of the amount due on the note of September 16, 1932, was made to the Dayton Morris Plan Bank upon application of plaintiffs appellants for a loan, which note was signed by Mary E. Ingle and the plaintiffs appellants. This last note not only represented the amount due on the note of September 16, 1932, but also interest thereon for a year in advance and $8.00 credited to one of the plaintiffs in payment of two weeks obligation on the principal. The plaintiffs apportioned the obligation under the note among themselves and it was paid in weekly installments, the last payment of which was made on October 10, 1934.

It is undisputed that no one of the plaintiffs appellants knew at the time of the completion of the payment of this last note of the then unreleased mortgage to the Dayton Morris Plan Bank, securing the original note. After completion of the payment on the $200.00 note, Mr. W. F. Grieser, who was at that time manager of the Morris Plan Bank, and at the time of trial its president, informed one of the plaintiffs, Mr. Parker, of the mortgage which the bank held and that they, the plaintiffs, were entitled thereto. It was not then taken but later one of the plaintiffs returned to the bank and the mortgage was assigned by the bank to the plaintiffs. The assignment is in the usual form, transferring and setting over to the plaintiffs "all its right, title and interest in and to the within mortgage without recourse."

Thereafter on April 12, 1935, plaintiffs instituted their action against the Ingles for judgment for the amount which they had paid to the bank on the $200.00 note and

for foreclosure of the mortgage which had been assigned to them by the bank. Judgment as upon default was taken by plaintiffs as prayed in their petition, which judgment was thereafter vacated and set aside on motion during term.

On and prior to November 25, 1932 defendant Hilt had been in negotiation with the W. W. Henry real estate agency in Dayton relative to the purchase of the property of the Ingles, described in the mortgages. The proposition had been made and accepted whereby Hilt was to pay $3500.00, for which he was to receive a warranty deed for the Ingles real estate, free and clear from all encumbrances, which sum was not only to pay the purchase price, but taxes and real estate commission on the sale.

Edgar O. Shank, an agent of the Henry real estate company handled the sales transaction and arranged on behalf of the defendant, on November 25, 1932, a meeting at the Dayton Morris Plan Bank, at which meeting were present, according to the statements of Mr. Grieser and Mr. Shank, the plaintiffs, Mrs. Ingle, Mr. Grieser and Mr. Shank.

Up to this point in the statement of facts there is no dispute. It is about the occurrences at this meeting that the variance in testimony is found. The witnesses, Shank and Grieser, testify that the transaction whereby Hilt was to buy the Ingles real estate was taken up with the plaintiffs and fully and carefully explained and the necessity of the release of the bank mortgage was presented; that thereupon, with full knowledge and consent of the plaintiffs, who were present, Mr. Grieser, on behalf of the bank, agreed that he would release the mortgage which the bank held; that it was of no value because the real estate was not worth in the market at that time more than $3300.00; that the plaintiffs appreciated that they were liable on the Ingles obligation, for which they had signed the note with them to the bank, agreed that they would execute a new note, assuming and agreeing to pay the Ingles obligation.

The plaintiffs testify that they made no such arrangement and one of them says that he knew nothing about it and the others merely say that they heard the matter of the mortgage discussed.

The arrangement between Hilt and the Ingles was consummated and a deed of general warranty given for the Ingle real estate. With the $3500.00 purchase price stock of the Building & Savings Association was bought and turned over to the mortgagee. The amount due on the first mortgage was liquidated, taxes and part of the real estate commission were paid. The first mortgage of the Loan Association was released but the second mortgage of the bank was not released. Grieser testifies that by some mistake the second mortgage was placed in the files of the bank with the $200.00 mortgage given by the plaintiffs with the result that it was turned over to them when paid with the assignment, as heretofore stated.

Defendant Hilt answered the amended petition and in his amended answer, after admitting the assignment of the mortgage but denying its validity and admitting certain matters appearing in the recorder's office, generally denied the averments of the amended petition and plead that there was nothing due on the note of March 19, 1931 because it had been fully satisfied on January 2, 1932.

By way of cross petition the transaction incident to the purchase of the real estate by Hilt from the Ingles was set up, together with the agreement that the second mortgage should be released, averment of the payment of the first mortgage; that the assignment was made by the bank to the plaintiffs by mistake, known to plaintiffs, without any consideration and prayed that the mortgage be adjusted null and void, ordered cancelled of record, that defendant be subrogated to the lien of the treasurer of Montgomery County for taxes and to the first mortgage lien of the Dayton Building & Savings Association.

Reply was filed by plaintiff, denying the new matter of the answer. Upon trial the court refused to set aside the judgment in behalf of plaintiffs against defendant, Mary E. Ingle, but held with the defendant on his cross petition in all particulars, found the mortgage to be void against defendant and ordered it released and the assignment thereof cancelled and held that the defendant was subrogated to the rights of the Building & Savings Association under its mortgage and the county treasurer for taxes due and paid by defendant at time of purchase of the real estate. It is from this judgment in favor of the defendant that the appeal on questions of law is prosecuted.

At the outset it should be observed that this cause is considered in this court as upon error and every legal intendment in favor of the judgment of the trial court must be indulged and unless the judgment

140

is unsupported by any fair view of the evidence or manifestly against the weight thereof, or contrary to law, we cannot disturb it.

It would seem that it should not be necessary to announce any principles of law to support the fairness and justice of the judgment in this case, giving to the witnesses on behalf of defendant that consideration which the trial court had the right to accord to their testimony. Resolved to the simplest terms it clearly appears upon the testimony of Grieser and Shank, which the trial court had the right to believe, that the bank, prior to the consummation of the sale by Ingle to defendant specifically agreed with defendants' agent to release its second mortgage, to which agreement the plaintiffs consented. It thus follows that when Grieser, for the bank, by mistake did that which was in direct conflict with his agreement and that of the plaintiffs, no right to recover should be accorded the plaintiffs upon such a transaction.

The assignment to the plaintiffs was such interest as the bank had in the mortgage. The bank had no interest whatever in the mortgage on and after November 25, 1932, because equity requires that to be done which in good conscience should be done. In good conscience the mortgage should have been released and must be treated as having been released. Thus no interest whatever passed to the plaintiffs by the pretended assignment.

Independent of the express testimony of Shank and Grieser the circumstances indicate that there was a new and different arrangement at the time of the execution of the last note. Up to the time of its execution the plaintiffs had paid nothing on the notes. Thereafter they paid in its entirety the note which they thereafter signed. This lends credence to the contention of the defendant that they understood that they and not Mrs. Ingle were expected to pay this debt which they as co-makers had signed to pay. They were but joint makers, insofar as the bank was concerned, although as between the Ingles and themselves they were sureties.

We have considered the questions presented on the appeal in a general way, which might probably answer the specific errors urged. We shall, however, give brief attention to. the specifications of error argued in the brief.

It is urged that the trial court erred in decreeing cancellation of the mortgage because it had no power or authority so to do; that the mortgage is merely incident to a debt and that the note being signed to the plaintiffs it follows that the mortgage security cannot be severed from the debt obligation.

The order of the court was not cancellation of mortgage, but cancellation of the assignment of the mortgage and release of the mortgage. It is basic that the rights of plaintiffs rise no higher than those of their assignor. Therefore, any defense which could have been asserted against the bank by the defendant Hilt to the collection of the mortgage in its hands can be asserted against the bank's assignees, the plaintiffs. **Bank of Leipsic v Logan, 9 O. N. P. (N.S.) 40; Osborn v McClelland, 43 Oh St 284.**

Assume that upon the facts developed in this case the mortgage had not been assigned by the bank and it had attempted to assert its rights under the mortgage against the real estate of defendant. Would there be any question that the defendant could assert invalidity of the mortgage in view of the positive agreement of its representative to release it? If the defendant could successfully defend against the mortgage in the hands of the bank it could do so in the hands of its assignees, the plaintiffs.

Though the mortgage in some instances is but the security for the debt and will pass the transfer of the note evidencing the debt, there can be no doubt that the note and mortgage are separate and distinct instruments. It follows that they can be considered and treated separately and if the mortgagee desires to relinquish the added security of the mortgage it could not be urged that he would not have that right. So in this case. Of course, if the release was made in derogation of some of the rights of plaintiffs because of their payments of the obligation of Mrs. Ingle, the question of liability as between the bank and the plaintiffs might arise. However, that aspect is taken from the case by reason of the fact that the plaintiffs were parties to the agreement to release the second mortgage.

It is further claimed that on November 25, 1932 the plaintiffs had no interest in the note and mortgage but when they thereafter paid the indebtedness of the Ingles their rights accrued to receive the benefit of the security held by the bank. Under the facts, on November 25, 1932 the bank held no security because as of that date it had agreed to release the mortgage which it held.

The equitable intervention of the trial judge can be supported upon the theory of mutual mistake of the as- signor in making and the assignees in accepting the assignment of the second mortgage. Mutual mistake has always been recognized in equity as grounds not only for res- cission of an instrument but for its reformation. 9 C.J. 1167. 6 O. J. 543. And rescission of an instrument may be granted for a mistake which is unilateral as well as for one which is mutual, if the position of the parties has not changed in such a way that they cannot be restored to their original rights. 6 O.J. 548. Stewart v Gordon, 60 Oh St 170.

In considering the right of the court to order rescission of the assignment and release of the mortgage, it should be kept in mind that the rights of the parties were fixed as of the date of the agreement at the bank and not as of the date of the completion of the payment by plaintiffs of their obligation on the $200.00 note.

The right of the court to order subrogation is also questioned but it is not necessary to give any considerable attention to this claim because the right of the court to find against the plaintiffs on their amended petition denied them the relief which they sought and the further right of the court to grant the prayer of the amended cross petition of defendant for rescission and release made it unnecessary to grant to the defendant the further right of subrogation. However, a careful analysis of **Joyce v Dauntz, 55 Oh St 538,** is convincing that the defendant was subrogated to the extent to which the trial court granted him that relief. See 27 O. Jur., 558.

We have given no consideration to the claim urged by the defendant that the note which the plaintiffs paid to the bank was not representative of the indebtedness secured by the mortgage assigned to the plaintiffs for the reason that the other questions considered are determinative of the cause in favor of the plaintiff.

In our judgment the trial court was correct in all particulars and the judgment must be affirmed.

BARNES, PJ, and GEIGER, J, concur.