**FERGUSON, Plaintiff-Appellee, v. SHARKEY CONSTRUCTION COMPANY, Defendant-Appellant.**

Ohio Appeals, Eighth District, Cuyahoga County.

No. 23852. Decided October 17, 1956.

Frank K. Levin, for plaintiff-appellee.
Paul Mancino, for defendant-appellant.

## OPINION

By SKEEL, J:

This appeal is from a judgment entered in the Common Pleas Court for the plaintiff in an action seeking damages for breach of contract.

The parties entered into a written contract whereby the defendant, as a mason contractor, agreed with the plaintiff, as a general contractor, to install footings for a " 40 x 40 garage base 1′ x 2′ deep, 4″ of concrete floor, with wire mesh 1 row of block 8″ bolts in blocks." Neither party, according to the record, knew at the time the contract was signed that the surface of the ground where the work was to be done was very uneven so that the work described in the contract could not be done until a fill was made on the rear of the site. The only evidence in the record as to the cost of making such fill and other work necessitated entirely by the deep slope was that the expense would exceed the contract price for the work described in the contract. The defendant, when he discovered the conditions of the surface of the land and that the floor and footings could not be built as provided in the contract until a fill was made, refused to proceed with the work. This action was then filed in which the plaintiff, who had paid no part of the consideration, prayed for damages in the sum of $5,000 and was awarded judgment by the trial judge, a jury having been waived, in the sum of $782.00.

The court was requested to return findings of fact separately from its conclusions of law. The court found that the agreement between the parties was in writing and that such written agreement was not supplemented by any other verbal agreement and that under the physical conditions where the floor and footings were to be built in accord with the contract, the reasonable cost for doing the work would be $1812.00. The court held that as a matter of law "where a contract provides for furnishing all materials and labor necessary for the work, as does the present one, and the physical conditions make it necessary to underpin the structure contracted for, this is a part of the work undertaken to be done and is included in the terms of the contract. These difficulties would have been foreseen if, before entering into the contract. ordinary care had been exercised by defendant in viewing the site of the work. In the absence of fraud or misrepresentation clearly relied on, such neglect of duty cannot affect the enforceability of the plain terms of a written contract." The court then answered seven interrogatories in which it is stated that there was a meeting of the minds upon the terms of the contract and that the contract required the defendant to furnish all the materials and labor to lay the cement floor described in the specifications no matter what the conditions were.

At the time the contract was signed, the record discloses that the

plaintiff and defendant disclaimed knowledge of the actual condition of the surface of the land where the garage was to be built although the defendant testified as follows:

"* * * when I asked him how the grade was, he said it was perfectly flat. That's his exact words; I took his words for it, because he was a contractor, he knew what he was talking about. If he wasn't a contractor I would have went and looked at the job. But the man is a contractor, excavation, understands grades."

The plaintiff, of course, denied stating that the surface of the ground was flat. He testified that he showed the defendant a "cut" (drawing) of the garage, which shows the concrete floor on a level surface. When the defendant called the attention of the plaintiff to the fact that a fill would be necessary before the work he had contracted to do could be accomplished, the plaintiff refused to make the fill and said to the defendant: "That's your hard luck, not mine." The discovery of the surface condition was not made by the defendant until his workmen went out to start the job. The plaintiff also testified in speaking of the fill:

"Q. Well, it was quite a bit, wasn't it?

"A. There was some, yes. I don't know what there was; I wasn't interested in it.

"Q. In other words, you didn't care; is that right?

"A. No.

"Q. Did Mr. Sharkey tell you that in order to do that job they would have to add about five or six courses of eight inch block in order to bring that flooring, that wall up around where the front end was?

"A. No, sir; he never discussed about it. All he said was put some fill in there. Never said about four or five courses of block or anything else. I didn't discuss it with him at all. I said 'That's your hard luck.'

"Q. Now, without putting in the fill-in and doing the extra work there, he could not put in the floor the way you wanted it, could he?

"A. He couldn't put the floor until the fill was in. He couldn't even put the foundation if he don't take the dirt out of it.

"Q. But in order to put the footers in and put the floor in, he would have to go ahead and build up the back end of that garage where the garage is supposed to be, is that right?

"A. Not one story. He could put his fill in.

"Q. That's what I am talking about. He would have to build it up by fill-in of whatever it takes?

"A. Yes.

"Q. There is nothing in this contract abount any fill-in, is there?

"THE COURT: It speaks for itself.

"Q. And you didn't care about whether he had put any fill-in; you told him it was his hard luck; is that right?

"A. That is correct; yes."

Contracts are to be construed by an examination of the written instrument (if the agreement is in writing.) The surrounding circumstances under which the agreement was entered into can only be considered where there is an ambiguity in the writing. There is no such

ambiguity in the written contract which is the basis of this action. It provides for the furnishing of all labor and material for work specified. The work specified is "didge footer for 40 x 40 garage base 1' x 2' deep, 4" of concrete floor, with wire mesh 1 row of block 8" bolts in blocks." There is not the slightest suggestion that the defendant was to grade the land where the garage was to be located. To hold that the defendant owed some legal duty to inspect the site before entering into the agreement and failure to do so cast a burden on him to accept hazards not mentioned in the contract because of his "neglect of duty" is without legal foundation.

The plaintiff's own case failed to establish any duty on the defendant to do the grading necessary as a preliminary step to building the foundation and laying the cement floor. As shown by the testimony quoted above the defendant's contract could not be performed until the grading necessary to fill the back of the lot was completed. These conclusions of fact are undisputed in the record.

As has been pointed out, both parties were unacquainted with existing facts which, if known, would have completely changed any dealing with respect to the contemplated work. There was here a mutual mistake of fact upon which the parties relied and which completely prevents "a meeting of the minds" as found by the court.

See **Byers v. Chapin, 28 Oh St 300; Parker v. Ingle, 27 Abs 137.**

For the foregoing reasons, the judgment of the court entered for the plaintiff is reversed and final judgment entered for the defendant on plaintiff's case. We do not disturb the finding for the plaintiff on defendant's cross-petition.

KOVACHY, PJ, HURD, J, concur.